Drake, Oh. J.,
delivered the opinion of the court:
If we were at liberty to allow our judgment to be swayed by sympathy, we should have no difficulty in giving the claimant a larger recovery than we feel justified in awarding her on principles of law. But, of course, it is not our province to reach results through the guidance of feeling, or to be turned aside from legal conclusions by the impulses of charity. This claimants case, like every other, must be determined by law.
The first question involved in it is, whether the claimant was in the employ of the government. We have no difficulty in answering this in the affirmative. She was, on the 12th of February, 1878, by the written act of the Secretary of the Interior, appointed “a laborer (first grade) in the Patent Office, at a salary of $720 per annum, to take effect when she should file the oath of office and enter on duty.”
There is no dispute that she took the oath of office on the 13th of February, 1878, and therefore no question of law is before us in connection with that matter.
The important point is, whether she complied with the terms of her appointment by entering on duty. Under ordinary circumstances we should regard it necessary, in order to answer *236 this affirmatively, that she should have reported herself to the proper officer of the Patent Office for duty; but all the facts of the case tend to make it clear that she was, in consideration of her distressing circumstances, to be allowed to do at her house the work which appertained to her position. She applied for such work, and no objection was made by the Commissioner of Patents to its being sent to her. Under these circumstances we are of opinion that she may be considered as having entered on duty from the day that she was sworn in. That she did not perform duty was not her fault, so far as appears. She was ready and willing to work, but no work was given her, nor was she officially informed that she must do her work in the office. After all that took place in relation to her having work sent to her house, it would be unjust to say that she was in default because she did not come to the office, when she was not required to do so.
Of course, she could not occupy that exceptional position for an indefinite length of time. She was made an exception to a rule of the office, in consideration of the peculiarly afflicting circumstances of her case, but the exception was to endure only temporarily. This she must have known; and knowing it, she should have taken the earliest moment that she could to have her official relations with the office clearly defined. If she had applied therefor, she would have been definitely informed whether the arrangement granted in view of her husband’s illness was to continue after she, by his death, was relived from attendance at his bedside; and then, if she desired to work in the office, she would, doubtless, have been provided with work there. But evidently she wished the work to be sent to her house, and did not wish to go to the office. Here was her mistake. It was not for her, but for the Commissioner of Patents to say where she should do duty. And it was for her to ascertain officially and definitely how long the charitable arrangement first permitted was to continue, if she expécted to be borne on the pay-rolls, and to receive the salary without performing service.
The final question is, Was that arrangement discontinued, and if so, when and how? If at no previous time, it was certainly terminated by the letter of the Secretary of the Interior to her of the 20th May, 1878, in answer to her verbal application for pay since the date of her oath of office; wherein he refused the *237 pay, on the ground that she had never yet entered on duty. This was full notice to her that she was not considered as having been in the employ of the department, or, at least, that she was not thenceforth to be so considered.
But there was a previous point of time when, in our judgment, the temporary arrangement in her favor must be considered to have come to an end, and that was when, at the close of the month in which she was appointed, the pay-rolls of the Patent Office employés were made up, and her name was not placed thereon. It was not only her urgent interest, in her painful circumstances, but it was every way incumbent on her, to find out whether her name was on the rolls.; for upon that depended her obtaining the pay she, doubtless, greatly needed. It is unreasonable to suppose that she failed to inquire into so important a matter as that. Every presumption is that she did inquire into it, and did know, at the close of February, that her name was not on the rolls. If she did know it, then was the time for her to have reported for duty in the office, if she wished to keep the place to which she had been appointed; for she was then fully advised that she could no longer stay at home doing no work, and yet receive pay as if she had done duty. So far as appears, she made no further movement to obtain either work or pay until nearly three months had elapsed; when she asked for pay, but not for work. Upon the principles laid down, at the present term, in Barbour’s Case (ante), we can do no otherwise than hold that from the time the first pay-roll after her appointment was made up without her name on it, and she took no notice of that fact, nor made any effort to keep the place which had been given her, she must be considered to have voluntarily abandoned the place as completely as if she had declared her resignation thereof in writing; and that after that date she is entitled to no pay.
For fifteen days in February she is entitled to be paid, and judgment will be entered in her favor for $30,